IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIREETHA WILBERTON, on behalf of M.M.W., a minor.<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 12 C 4216<br><br>Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying the claims of M.M.W.,[2] a minor, for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's Motion for summary judgment or remand [Doc. No. 14] is DENIED and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is GRANTED.

## BACKGROUND

### I. PROCEDURAL HISTORY

On November 19, 2008, Shireetha Wilberton filed a claim for Supplemental Security Income on behalf of her daughter M.M.W., a minor, alleging M.M.W.'s

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).
[2] M.M.W. is represented by Shireetha Wilberton, her mother.

disability since November 14, 2008. The claim was denied initially and upon reconsideration, after which Wilberton timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 17, 2010. M.M.W. personally appeared and testified at the hearing and was represented by counsel. Wilberton also testified at the hearing, as did medical expert Dr. Keenan Farrell.

On October 26, 2010, the ALJ denied M.M.W.'s claim for Supplemental Security Income, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Wilberton's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.   FACTUAL BACKGROUND[3]

### A.   Background

M.M.W. was born on October 9, 1999 and was ten years old at the time of the ALJ hearing.

### B.   Medical Evidence

M.M.W. was referred to occupational therapy in 2003 because she was having difficulty playing with her peers and understanding directions and questions, and because she was not meeting developmental milestones. (R. 256-57.) She worked with a therapist through July of 2005. A 2004 therapy evaluation revealed that she did not play well with others and still needed assistance tying shoes and using a zipper. (R. 292.) A speech and language evaluation, also from 2004, concluded that

---

[3] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

she had moderate to severe delays in language receptiveness and a moderate delay in expressiveness. (R. 269-70.) In 2005, an occupational therapy evaluation summary specified that M.M.W. became easily frustrated when performing tasks and required constant praise in order to complete those tasks. (R.294.)

In 2008, M.M.W. was referred to a psychiatrist for assessment due to problems at school. The assessment concluded that she was "explosive, aggressive, and ready to fight with her peers and siblings." (R. 222.) The report also noted that M.M.W.'s teachers had reported that she was "socially unwell," that M.M.W. had behavioral problems, and that she reported bad dreams once a week. *Id.* M.M.W. also experienced nosebleeds and would pick her nose to attempt to make it bleed in order to be excused from school. *Id.* M.M.W. was diagnosed with attention deficit hyperactivity disorder (ADHD) and prescribed Focalin in 10 milligram doses. (223.) In a follow-up appointment, M.M.W. reported experiencing stomach aches a side-effect of the medication and, as a result, her dosage was reduced to 5 milligrams. (R. 224.) However, experience proved that 5 milligrams was not a strong enough dose, and M.M.W.'s dosage was later changed to 5 milligrams in the morning and 2.5 milligrams in the afternoon. (R. 226.) In a late January 2009 session, it was noted that M.M.W. improved with Focalin and was better focused, although M.M.W. remained behind in school (R. 244.) Continued progress was reported in April 2009, (R. 245.), and November 2009, (R. 253), although M.M.W.'s dosage of Focalin was increased to 10 milligrams. (R. 253.) At the last appointment in the record,

M.M.W.'s mother reported worsening symptoms, and M.M.W.'s Focalin dosage was increased to 15 milligrams. (R. 255.)

As part of the application process, M.M.W.'s records were reviewed by two agency medical consultants, Dr. Ronald Havens in late January 2009 and Dr. Patricia Beers in June 2009. Both concluded that M.M.W. had a severe impairment, but that the impairment did not meet, medically equal, or functionally equal any Listed impairment. (R. 238, 246.) Both Drs. Havens and Beers found that M.M.W. had less than marked limitations in all domains of functioning, including the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. (R. 240, 248.) Accordingly, both Drs. Havens and Beers concluded that M.M.W. was not disabled. (R. 243, 251.)

C. **Evidence from School**

M.M.W.'s teacher also submitted an evaluation as part of the application, which was completed in early January 2009. With respect to acquiring and using information, the teacher noted that M.M.W. had difficulty working independently and frequently requested assistance and attention; she found that M.M.W. had "an obvious problem" on a majority of relevant measures. (R. 229.) With respect to attending and completing tasks, the teacher noted that M.M.W. had "a difficult time not disrupting others during work periods throughout the day. This happens on a frequent basis." (R. 230.) However, the teacher found that M.M.W. had a slight problem on most key activities, with a serious problem "working without distracting self or others." *Id.* With respect to interacting and relating with others, the teacher

4

noted that M.M.W. "consistently seeks both positive and negative attention." (R. 231.) She also noted that M.M.W. had a slight or no problem in all of the related key areas except expressing anger appropriately and seeking attention appropriately, which were an obvious problem and a serious problem respectively. *Id.*

In 2010, an Individualized Education Program (IEP) was formed for M.M.W. at her school. According to the IEP, M.M.W. was performing below grade level in all academic areas. (R. 312.) She scored in the eighth percentile in one standardized test relating to language arts, and her evaluator noted that she had difficulty reading and independently answering questions. (R. 314.) In terms of developmental and functional needs, it was noted in the IEP that M.M.W. had ability but was not "applying herself," was "inconsistent in her efforts," and would benefit from additional time and attention on schoolwork. (R. 305.)

### D.     **Plaintiff's Testimony**

M.M.W. testified at the hearing that she was able to bathe, dress, and feed herself. She also performed limited chores, cleaning her room and taking out the garbage. At school, she received help from "special teachers" during the school day, but could add, subtract, and multiply. M.M.W. stated that she does her homework. M.M.W. also testified that she would get into fights and verbal altercations weekly at her school, and that she would get in trouble at school for talking with other students instead of doing her work. She also stated that, sometimes when angered, she would make her nose bleed. Although M.M.W. takes Focalin every day, she still has trouble concentrating on schoolwork. M.M.W. testified that taking Focalin

5

caused her "to see things moving around," and that she hears birds chirping and people talking when she takes her medication. (R. 61.)

### E. <u>Mother's Testimony</u>

Wilberton, M.M.W.'s mother, also testified at the hearing. She stated that M.M.W. had a speech impediment, although her problem had improved through therapy. Although M.M.W. had been barely passing her classes, she had been continued to fourth grade based on the formation of an IEP. Her mother stated that M.M.W. does not complete her homework independently, but instead needs someone to sit with her in order to help her complete her work. She also testified that M.M.W. had been "hearing voices" since she began taking Focalin. Wilberton also stated that M.M.W. has problems sleeping and also has nightmares. However, she also acknowledged that M.M.W.'s ability to focus had improved after she had begun taking Focalin. (R. 71-72, 77-78.)

### F. <u>Medical Expert Testimony</u>

Dr. Keenan Farrell, a licensed clinical psychologist, also testified. He recognized a diagnosis of ADHD and found that M.M.W.'s condition was severe, but that her condition did not medically or functionally equal a listing. Dr. Farrell testified that M.M.W. had a marked limitation in interacting and relating to others. However, Dr. Farrell also stated that M.M.W. had less-than-marked limitations in acquiring and using information, attending and completing tasks, caring for herself, and health and physical well-being, and had no limitation in moving about and manipulating objects.

## G. ALJ Decision

The ALJ found at step one that M.M.W. had not engaged in substantial gainful activity since her application date of November 19, 2008. At step two, the ALJ concluded that M.M.W. had the severe impairment of attention deficit hyperactivity disorder. At step 3, however, the ALJ concluded M.M.W.'s impairment did not meet or medically equal a Listing, after noting that no physician had indicated findings sufficient to satisfy a listing. After discussing the evidence presented in the case, the ALJ concluded that M.M.W. had less-than-marked limitations in acquiring and using information, attending and completing tasks, interacting with and relating to others, and caring for herself, and that she had no limitation in moving about and manipulating objects or health and physical well-being. Accordingly, the ALJ concluded that M.M.W.'s impairment did not functionally equal a listing, and that she therefore was not disabled.

## DISCUSSION

## I. ALJ LEGAL STANDARD

For a child to qualify as disabled and thus eligible for SSI, she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide for a three-step framework for analyzing the disability claims of children. *See* 20 C.F.R. § 416.924(a). First, the ALJ must determine if the child is engaged in substantial gainful activity; if so, there will be a finding of no disability.

7

Second, if the child does not have a severe medical impairment or combination of impairments, then there will also be a finding of no disability. Third, the ALJ must determine if the severe impairment(s) meet, medically equal, or functionally equal the Listings of Impairments found at 20 C.F.R. pt. 404, subpt. P, App. 1 and also meet the duration requirement. If so, that will lead to a finding of disability.

To determine whether an impairment is functionally equivalent to a Listing, the ALJ must analyze the severity of the impairment in six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Hopgood v. Astrue*, 578 F.3d 696, (7th Cir. 2009); *see* 20 C.F.R. § 416.926a(b)(1). An impairment (or combination thereof) "must be of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation is found when the impairment(s) "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also includes "a limitation that is 'more than moderate' but 'less than extreme.'" *Id*. An "extreme" limitation exists when the impairment(s) "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme limitation," however, "does not necessarily mean a total lack or loss of ability to function." *Id*.

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in the evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Where conflicting evidence would allow reasonable minds could differ as to whether a claimant is disabled, a reviewing court "must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

A reviewing court "examine[s] the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow . . . a reviewing court . . . to assess the validity of the agency's ultimate findings and afford [a claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . .

9

and must adequately articulate his analysis so that we can follow his reasoning . . . ."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). And an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Wilberton argues that the ALJ's erred by failing to adequately evaluate whether M.M.W.'s impairment both medically met and functionally equaled Listing 112.11. She contends that the ALJ improperly failed to consider evidence which would have proven disability and, therefore, that the ALJ's analysis was improper. But because the ALJ considered that evidence presented and because his decision is otherwise supported, the ALJ did not err and his decision is affirmed.

### A. <u>Medical Equivalence</u>

M.M.W. argues first that the ALJ erred in deciding that her impairment did not meet listing 112.11. She claims that, in reaching his conclusion, the ALJ failed to adequately consider the notes of her treating psychiatrist and classroom teacher, her IEP, and her low scores on standardized tests.

"[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate

10

conclusion while ignoring the evidence that undermines it," and an "ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123. In this case it is true that the ALJ did not mention the specific pieces of evidence identified by M.M.W. in the paragraph of the opinion in which he reached his step 3 conclusion. However, in his survey of the evidence elsewhere in the opinion, the ALJ conducted an extensive analysis of the evidence of record in the case and specifically discussed the evidence that M.M.W. claims was ignored, including her 2008 psychiatric evaluation, the later reports of her psychiatrist, the report of agency psychiatrist Dr. Havens, and M.M.W.'s teachers' evaluations. (R. 13-16.)

Wilberton therefore appears to argue that the ALJ erred because his detailed discussion of the evidence she cites was not included in the paragraph containing his conclusion on meeting Listing 112.11. But "[t]here is no requirement of such tidy packaging." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010). Instead, a reviewing Court "read[s] the ALJ's decision as a whole and with common sense." *Id.* (citing *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004)) (finding no error where, "[a]lthough the ALJ cited the listings she considered and discussed the evidence of [the child's] impairments in separate parts of the decision, [the claimant] treat[ed] the finding as unreasoned because the ALJ did not incorporate that information within a single paragraph"). As the Seventh Circuit has specified, "[b]ecause it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially

11

similar factual analyses at both steps three and five," a reviewing court "consider[s] the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." *Rice*, 384 F.3d at 370 n.5. In this case, where the ALJ addressed the evidence M.M.W. argues was overlooked in a separate part of the opinion, it cannot be said that the ALJ ignored an entire line of evidence in reaching his conclusion. The ALJ did not err on this account.

To the extent that Wilberton argues that the ALJ's determination was in error because substantial evidence would have supported a finding that M.M.W. met the Listing, this immaterial to the Court's review. Instead, "so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled," this court "must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996)); *see also Elder*, 529 F.3d at 413. In this case, the ALJ correctly noted that all of the medical opinions in the record had concluded that M.M.W. was not disabled at step 3, which provides substantial evidence for his conclusion. *See Buckhanon*, 368 F. App'x at 679 ("The ALJ expressly relied upon the medical judgment of the state-agency consultants [in determining medical equivalence], and their uncontradicted opinions constitute substantial evidence."). The ALJ did not err in determining that M.M.W.'s impairment did not meet Listing 112.11.

### B. <u>Functional Equivalence</u>

M.M.W. also argues that the ALJ erred when he determined that her impairment did not functionally equal Listing 112.11. Wilberton contends the ALJ

12

erred when he found M.M.W.'s impairment to be less-than-marked in three domains. Similar to her claims regarding medical equivalence, Wilberton argues that the ALJ failed to consider evidence contradicting his conclusion when he determined that M.M.W.'s limitations in acquiring and using information, attending and completing tasks, and interacting and relating to others. *See* 20 C.F.R. §§ 416.226a(g)-(i). However, while the ALJ's discussion of the evidence was not optimally organized, he nonetheless adequately considered the evidence presented in making his decision, which is in turn supported his decision with substantial evidence. Accordingly, the ALJ did not err.

### 1. Acquiring and using information

Wilberton argues that that ALJ erred in determining that M.M.W. was not markedly limited in acquiring and using information. *See* 20 C.F.R. § 416.926a(g); SSR 09-3p, **2009 WL 396025**.[4] She first contends that the ALJ failed to adequately discuss the evidence contradicting his finding by failing to consider portions of M.M.W.'s IEP which found her eligible for an extended school-year program, as well as teacher evaluations noting low test scores and difficulty concentrating and completing tasks. This characterization of the decision, however, is incorrect.

As with the ALJ's finding on medical equivalence, it is true that the ALJ did not present a detailed discussion of the evidence cited by Wilberton in the paragraph where stated his decision on this domain. (R. 17.) However, earlier in the

---

[4] Interpretive rules, such as Social Security Rulings ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

13

opinion the ALJ gave an extensive narrative discussion of M.M.J.'s diagnosis of ADHD, the symptoms of the impairment, and her course of treatment prior to reaching her conclusions as to functional limitations, and noted his reason for discounting this evidence. There, the ALJ specifically referenced the teacher's evaluation, noted the problems that the teacher had identified, and determined to give the opinion "moderate weight." (R. 15.) However, the ALJ noted that the record indicated that M.M.W.'s condition had improved since the evaluation, which took place prior to the reports indicating her improvement with her medication. *Id.* The ALJ also discussed the IEP specifically, referencing the low test scores and M.M.W.'s difficulty concentrating, but found this contradicted by the IEP's conclusion that M.M.W. had the ability to improve but had put forth inconsistent efforts. *Id.* And in the section of the decision where the ALJ addressed this domain explicitly, he noted the IEP and specifically identified the low test scores and reports that M.M.W. had difficulty focusing and following instructions.

As stated above, while an ALJ may not ignore evidence contradicting his ultimate opinion, he need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice*, 384 F.3d at 371 (internal quotation marks and citation omitted). In this case, where the ALJ addressed the contrary evidence and linked that evidence to his ultimate finding, he appropriately built a "logical bridge" from the evidence to his conclusion. *See Washington ex rel. Stewart v. Barnhart*, 481 F. Supp. 2d 905, 915 (N.D. Ill. 2007) ("Because this Court can track the ALJ's reasoning regarding the evidence and is

14

certain that the ALJ considered all evidence that is important, this Court finds the ALJ's decision meets the minimum articulation standard.").

Wilberton also argues that the ALJ failed to give appropriate weight to her testimony and to M.M.W.'s teacher's evaluation, and that the ALJ should have found M.M.W.'s responses at the hearing indicative of disability. This Court, however, may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner. [Its] task is limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (internal citation omitted). In addition to his survey of the evidence which noted that three agency physicians had concluded that M.M.W.'s limitations were less-than marked in this domain, the ALJ also pointed to evidence from M.M.W.'s teacher's report and her IEP in support of her finding, as well as testimony from M.M.W.'s mother regarding her capabilities in reaching his decision. The ALJ's decision on this point was supported by substantial evidence, and he did not err in finding that M.M.W. had less than marked limitations in this domain.

### 2. Attending and completing tasks

Wilberton also argues that the ALJ erred in finding that M.M.W. did not have a marked limitation in attending and completing tasks. *See* 20 C.F.R. § 416.926a(h)(3); SSR 09-4p, 2009 WL 396033. Wilberton's arguments on this point also consist largely of a disagreement with the ALJ about the weight due to competing pieces of evidence: she disputes the weight given to the ALJ's findings

that M.M.W. helped with chores at home and that M.M.W. takes her medication without prompting, as well as his evaluation of M.M.W.'s performance at the hearing. Wilberton argues that the ALJ's evaluation of the evidence was flawed because, although M.M.W. stated she completed chores at home, she did so only when bored. And Wilberton argues that, had the ALJ questioned her more robustly at the hearing, he would have "seen more of her comprehension and communication difficulties," which would have altered his analysis. (Clmt.'s Mot. at 15.)

As stated above, it is not for this Court to reweigh the evidence in a Social Security case; instead, a reviewing court examines the decision to determine whether it was supported by evidence which "a reasonable person would accept . . . as adequate to support the conclusion." *See Young*, 362 F.3d at 1001. While the evidence in the case could have been viewed in a different manner, the ALJ undertook an extensive discussion of the medical evidence as described above prior to making his findings. Relevant to this domain, the ALJ not only discussed the evidence raised by Wilberton, but also noted that evidence from both state agency medical consultants had concluded the limitation in this domain were less-than marked. (R. 18.) Furthermore, he noted that Wilberton had testified that M.M.W.'s Focalin prescription had improved her functioning, and that M.M.W.'s teacher had noted that—with the exception of working without distracting other students—M.M.W.'s problems in this area were "generally slight." (R. 18.) This evidence is "sufficient for a reasonable person to accept as adequate to support the [ALJ's]

decision." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The ALJ did not err in finding that M.M.W.'s impairment was less-than marked in this domain.

### 3. Interacting and relating to others

Wilberton also argues that the ALJ erred in finding that M.M.W. did not have a marked limitation in interacting and relating with others. *See* 20 C.F.R. §416.926a(i); SSR 09-5p, 2009 WL 396026. Wilberton claims that the ALJ improperly rejected the testimony of the testifying medical expert—who determined that M.M.W. had a marked limitation in this domain—without providing sufficient grounds for doing so.

In support of her argument, Wilberton relies on *Patino v. Astrue*, 574 F. Supp. 2d 862, 871 (N.D. Ill. 2008). In that case, a psychologist had initially testified at the hearing that, within the domain of "acquiring and using information," the child had a "marked" limitation; later in her testimony, however, the psychologist stated that aspects of the child's limitation were "extreme." *Id.* at 868. The ALJ's decision, however, did not address the psychologist's testimony at all; instead, it simply stated that the decision was made after " 'consider[ing] all of the evidence of the record, including the medical records and other evidence' as well as 'testimony show[ing] that claimant has a severe learning disability in reading.' " *Id.* at 870 (internal quotation marks omitted). In reviewing the decision, the district court found that the ALJ had failed to sufficiently consider the psychologist's testimony on this domain because the opinion "never refer[ed] to [the expert] by name or, more importantly, discusse[d] her substantial testimony at any length." *Id.* at 870. The

17

Court found this particularly problematic given the expert's "conflicting statements as to whether Patino showed an 'extreme' versus 'marked' limitation." *Id.*

M.M.W.'s case, however, is distinguishable from *Patino*. Here, the ALJ explicitly discussed the medical expert's opinion and noted his reasons for discounting that opinion, including contrary testimony from state agency psychologists and evidence from M.M.W., her mother, her teacher, and her IEP. (R. 19.) Furthermore, although occurring earlier in the opinion as described above, the ALJ gave a detailed account of the expert's testimony, (R. 16), and a detailed account of the evidence referenced later in discounting that testimony. (R. 13-16.) *Patino* is simply not applicable to the facts of this case, where the ALJ explicitly addressed the medical expert's conclusion and the evidence contradicting it before determining not to credit the opinion. The ALJ did not err on this point.

Wilberton also argues that the ALJ selectively discussed the evidence by failing to consider testimony from M.M.W., Wilberton herself, and M.M.W.'s teacher as to the extent of M.M.W.'s limitations. However, again that is simply not the case, as the ALJ gave a detailed examination of these points in his summary of the evidence. (R. 13-16) And even in the paragraph stating his conclusion on this domain, the ALJ noted the evidence that Wilberton argues was overlooked—that M.M.W. had been involved in altercations with other students in the past and that M.M.W.'s teacher has stated that M.M.W. often seeks attention inappropriately— before concluding that evidence from M.M.W.'s IEP, her teacher's evaluation, and the agency medical consultants contradicted this finding. (R. 19.) As "an ALJ need

18

only 'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability,'" *Rice*, 384 F.3d at 371, the ALJ did not err. It is clear that the ALJ considered the evidence raised by M.M.W. in reaching his decision on this domain, and "the ALJ satisfied his minimal duty to articulate his reasons and make a bridge between the evidence and the outcome." *Id.*

Additionally, even if the ALJ erred in rejecting the medical expert's testimony, such an error was harmless. Harmless error in a Social Security case occurs where a reviewing Court "can say with great confidence" that "no reasonable ALJ would reach a contrary decision on remand." *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). In order to prove disability based on functional equivalence to a listing, as Wilberton argues she had done, a claimant must show an impairment "resulting in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). In this case, M.M.W. does not contend that her limitations in any domain were "extreme," only that the ALJ erred in failing to find them "marked" in the three domains described above. But, as discussed above, the ALJ did not err in finding that M.M.W. was not markedly limited in the first two domains. Therefore, even if the ALJ should have credited the testifying expert's opinion and found M.M.W. markedly limited in interacting and relating to others, this would not result in a finding of disability. Even if the ALJ erred in this respect, no ALJ would reach a different decision on remand, and such an error would be harmless.

19

# CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment or remand [Doc. No. 14] is DENIED and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is GRANTED.

**SO ORDERED.**  ENTERED:

**DATE:   November 17, 2015**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**